UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LINDA M. LIBERTI,                     *
                                      *
          Plaintiff,                  *
                                      *
               v.                     *
                                      *          Civil Action No. 14-30132-MGM
CAROLYN W. COLVIN,                    *
Acting Commissioner of Social Security, *
                                      *
          Defendant.                  *

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION
FOR ORDER REVERSING THE DECISION OF THE COMMISSIONER AND
DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER
(Dkt. Nos. 8 and 18)

June 15, 2016

MASTROIANNI, U.S.D.J.

Plaintiff, Linda Liberti, appeals from the final decision of Defendant, Carolyn W. Colvin,

Acting Commissioner of the Social Security Administration ("SSA"), denying her application for

waiver of repayment with respect to the overpayment of Disability Insurance Benefits paid to

Plaintiff between May 2006 and August 2010. Plaintiff argues the decision of the Administrative

Law Judge ("ALJ") should be reversed because (1) the ALJ did not consider whether the amount of

overpayment was properly calculated and (2) the ALJ's determination that Plaintiff was not "without

fault" for the overpayment was not supported by substantial evidence.

I.     Applicant History

In 1996 Plaintiff began receiving Social Security disability benefits. (Dkt. No. 7,

Administrative Record ("A.R.") 29-30.) She returned to work on a part-time basis in 2001. She was

employed by CVS and began training to be a pharmacy technician. (A.R. at 25, 34.) At CVS, Plaintiff

received special accommodations due to her disability. (A.R. 25.) In August 2003 Plaintiff received a letter from SSA which began: "We recently reviewed the evidence in your Social Security disability claim and find that your disability is continuing." (A.R. at 330.) The letter went on to state: "Although you are now working . . ., we find that the work you have been doing does not show that you can do substantial work." Plaintiff was also informed that she had completed her "trial work period" by doing work during nine months between October 2001 and February 2003. (A.R. at 330.) The last paragraph on the first page of the letter informed Plaintiff: "Your claim will be reviewed from time to time to see if you are still eligible for benefits based on disability. When your claim is reviewed, you will be contacted if there is any question as to whether your eligibility continues." (A.R. at 330.)

    With the letter was a separate sheet with the heading "Important Information" which explained that after the end of the trial work period, Plaintiff would continue to have a right to monthly payments if she was disabled and her average earnings did not exceed a set amount. (*Id.*) The amount beginning in January 2003 was $800 per month or $9,600 annually. (*Id.*) The final sentence read: "If your average earnings are more than these amounts, we call your work substantial and we will stop your monthly payments." (*Id.*) After receiving the letter, Plaintiff continued working approximately 15 hours per week at CVS and in 2003 her total income was $6,289.16. (A.R. at 133.)

    During 2004 she left her job at CVS and began working as a pharmacy tech at Mercy Hospital. Plaintiff asserts she was able to work at Mercy Hospital because of special accommodations. (A.R. 25.)  While working at Mercy Hospital, Plaintiff increased her hours. In 2004, Plaintiff's earnings from Mercy Hospital exceeded $800 every month except January and April. (A.R. at 341.) Her total annual earnings in 2004 were $13,758.07. (A.R. at 133.) She reported those earnings to SSA in July of 2005. (A.R. 341.) In January of 2006, Plaintiff received a call from an employee of SSA, Ms. Twiggs, regarding the amount of pay Plaintiff received during 2005. (A.R.

2

338.) Plaintiff's handwritten notes regarding that conversation state that Plaintiff was told "my earnings for 2005 exceed the SSI income allowance, and because of that, I will probably have to repay Social Security." (A.R. at 338.)

Despite that warning, the Administrative Record does not contain any correspondence during the following months from SSA to Plaintiff regarding her 2005 earnings, her ineligibility for disability payments, or her obligation to repay SSA for benefits received in 2005. Plaintiff continued to receive and use SSI payments sent to her. In November of 2008 she received a letter informing her that her disability payments would increase in order to give her credit for her earnings. (A.R. at 73.) SSA sent a second letter to Plaintiff approximately one week later. (A.R. 73.)

Plaintiff began working at Baystate Hospital as a pharmacy technician in 2009 and she reported the change in her work to SSA. (A.R. 78-79.) After reporting that change, she received another letter informing her that her disability payments would increase. (A.R. at 80.) Finally, in July 2010, Plaintiff received a letter from SSA informing her that "it appears we will decide that you are not entitled to payments beginning May 2006," which was more than four years prior to the date of the letter. (A.R. at 82.) The letter informed Plaintiff that she had ten days to provide additional information to the SSA before the decision would be final. (A.R. 82.) The SSA sent a second letter, dated eleven days later, which informed Plaintiff that she had been overpaid $2,967 in benefits for a period between May 2004 and July 2004. (A.R. 84.) The letter requested repayment within 30 days and explained that if the repayment was not made during that time, an incremental amount would be deducted from her full benefits. (A.R. 84.) On September 1, 2010, the SSA sent another letter to Plaintiff informing her that the SSA had "decided that you are not entitled to payments beginning May 2006." (A.R. 90.) Five days later, the SSA sent another letter to Plaintiff, this time informing her that she was required to pay back $61,051 of overpaid benefits. (A.R. 92.) The letter explained that the amount is equal to all benefits paid to her between May 2006 and the date of the letter. (A.R. 92.)

3

II.     DISCUSSION

A.  Standard of Review

A court may not disturb the Commissioner's decision if it is grounded in substantial

evidence.  See 42 U.S.C. §§ 405(g). Substantial evidence is such relevant evidence as a reasonable

mind accepts as adequate to support a conclusion.  *Rodriguez v. Sec'y of Health & Human Servs.*, 647

F.2d 218, 222 (1st Cir. 1981).  The Supreme Court has defined substantial evidence as "more than a

mere scintilla."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*,

305 U.S. 197, 229 (1938)).  Thus, even if the administrative record could support multiple

conclusions, a court must uphold the Commissioner's findings if a reasonable mind, reviewing the

evidence in the record as a whole, could accept it as adequate to support his conclusion.  *Ortiz v.*

*Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991).

B.  Receiving Benefits and Returning to Work

The Social Security Act (the "Act") provides for the payment of monetary benefits to

qualifying disabled individuals. 42 U.S.C. § 423.  In order to encourage disabled individuals who are

receiving Social Security disability insurance benefits to try to return to work, the regulations

interpreting the Act allow recipients to receive both their full disability benefit and earned income

during a trial work period. 20 C.F.R. § 404.1592. The trial work period concludes when the applicant

has earned income in nine separate months over a 60 month period. *Id.* § 404.1592(e). At the end of

the trial work period, a 36-month reentitlement period begins. *Id.* § 1592a. During the reentitlement

period an individual is able to "continue to test [their] ability to work." *Id.* The first time an

individual works during the reentitlement period and engages in substantial gainful activity, the SSA

"will find that [their] disability ceased" and may "stop [their] benefits." *Id.*

A person is considered to be engaged in "substantial gainful activity" if the person engages in a "work activity that involves doing significant physical or mental activities" and the activity is one "usually done for pay or profit." *Id.* § 1572. The SSA considers a person to have engaged in substantial gainful activity if the person's earnings exceed a monthly threshold amount. *Id.* § 1574(a)(1), (b)(2). In 2004 the inflation-adjusted threshold amount was $810. Table of Monthly substantial gainful activity amounts by disability type, https://www.ssa.gov/oact/cola/sga.html (listing the amounts as calculated pursuant to 20 C.F.R. § 1574(b)). The amount increased annually to $1,000 per month in 2010. *Id.* When a person's earnings are subsidized, the SSA does not consider the amount of the subsidy when calculating the amount the person earned. 20 C.F.R. § 404.1574(a)(2).

During the reentitlement period, if the person ceases to engage in substantial gainful activity, the person may begin to receive benefits again without needing to reapply. *Id.* § 404.1592a. If the person "worked during the reentitlement period and [the SSA] decided that [their] disability ceased during the reentitlement period because of [their] work . . . [the SSA] will find that [their] entitlement to disability benefits terminates in the first month in which [they] engaged in substantial gainful activity after the end of the reentitlement period." *Id.* at §404.1592a (3)(i). On the other hand, if the SSA "did not find that [their] disability ceased because of work activity during the reentitlement period, [the SSA] will apply all of the relevant provisions . . . to determine whether [their] disability ceased because [they] performed substantial gainful activity after the reentitlement period." *Id.* §404.1592a(3)(ii).

C. <u>Overpayment</u>

When the SSA makes an overpayment of benefits to a person, the Act requires the Commissioner to seek repayment from the person. 42 U.S.C. § 404(a). Recovery of the overpayment

5

is waived where the person is (1) without fault and (2) the recovery of such amount "would defeat the purpose of [Subchapter II of the Act] or would be against equity and good conscience." 42 U.S.C. § 404(b)(1). When determining whether a person is at fault, the SSA considers "all pertinent circumstances" of the individual, including their intelligence and educational background and whether the overpayment resulted from "acceptance of a payment which [the person] either knew or could have been expected to know was incorrect." 20 C.F.R. § 404.507.

A second basis for waiver of repayment for an overpayment may exist where a claimant relied on erroneous information from the SSA in reaching her decision to accept the overpayment. *Tefera v. Colvin*, 61 F. Supp. 3d 207, 212 (D. Mass. 2014). Among the types of information a claimant may have relied upon are "[t]he continued issuance of benefit checks to [the claimant] after [the claimant] sent notice to the Administration of the event which caused or should have caused the deductions provided that such continued issuance of checks led [the claimant] to believe in good faith that [the claimant] was entitled to checks subsequently received" and "erroneous information from an official within the [SSA]." 20 C.F.R. § 404.510(b), (g). Under this regulation, a claimant is automatically granted a waiver if the claimant is without fault; no analysis of equity or good conscience is required. *Tefera*, 61 F. Supp. 3d at 212.[1]

D. <u>ALJ's Findings</u>

The ALJ found Plaintiff had been notified by letter in August 2003 that she had completed her trial work period and that changes in her employment could affect her eligibility for benefits and require repayment of benefits. (A.R. at 16.) The letter also informed Plaintiff of her obligations to report changes in her work to the SSA and explained that after the trial work period, there was a 36-month extended period of eligibility during which Plaintiff could receive benefits in months when

---

[1] However, it appears that in this case the equity analysis would favor Plaintiff.

her "work was not substantial." *Id.* Additionally, the ALJ found that later, in July of 2005, Plaintiff

had successfully reported her work to the SSA and that she had conversations in January of 2006

about her 2005 work. *Id.* During those conversations, the ALJ found, Plaintiff was informed by an

SSA employee that she had "exceeded the income allowance and would likely have to repay the

overpaid amount." (A.R. at 17.) Despite the inconclusive nature of the comments attributed to SSA

employee, Ms. Twiggs, and the failure of the SSA to follow-up with a definitive statement in writing,

the ALJ found it was "reasonable that [Plaintiff] should have realized that she should not be able to

collect Social Security benefits while working" and that she "knew (or should have known) she was

not entitled to collect benefits while being employed at a certain level." *Id.* The ALJ also noted

Plaintiff's testimony at the hearing that she "'probably' had a discussion with an [SSA] employee

about the effect of work activity on her benefits" and found Plaintiff's professed belief that "she

could collect her full disability benefits while working at the substantial gainful activity level, on

more than a short term basis" was inconsistent with the evidence of record.

E.   Analysis

     In deciding whether Plaintiff should receive a waiver for the repayment of the disability

benefits overpaid to her by the SSA, the ALJ considered whether Plaintiff could be found without

fault. The ALJ appears not to have considered the full scope of the SSA's communications with

Plaintiff prior to and during the period of overpayment.  Specifically, the ALJ did not consider the

tentative nature of the telephone conversation in January of 2006 or the fact that following that call,

the SSA did not send Plaintiff any written documentation consistent with the information she was

given over the phone and continued to pay disability benefits to her. Nor did the ALJ consider the

impact on Plaintiff's understanding of the two letters the SSA sent to her during the period of

overpayment informing her that SSA "checked [SSA] records to see if any changes to [her] benefits

[were] necessary" and that her benefits would be increased based on the earnings she had in the previous year. (A.R. at 73, 80.)

Mindful of the applicable and deferential standard this court uses to review decisions of the Commissioner, the court finds remand appropriate in this case. The evidence before the ALJ demonstrated that Plaintiff had informed the SSA about her earnings as required and made attempts to communicate with the local SSA office about her benefits. Following the January of 2006 conversation cited by the ALJ as providing Plaintiff with a basis for knowing she was not entitled to continue receiving benefits, the SSA continued to make disability payments to Plaintiff for three and a half years. During that time the SSA twice sent Plaintiff notices informing her that the amount of her benefits was being increased based on her earnings. (A.R. at 73, 80.) The ALJ's failure to consider these communications from SSA and the extent to which Plaintiff may have relied upon them prevents the decision from being grounded in substantial evidence as required by the Act.

III.   CONCLUSION

For these reasons, the court ALLOWS Plaintiff's Motion for Order Reversing the Decision of the Commissioner, (Dkt. No. 8), and DENIES Defendant's Motion for Order Affirming Decision of the Commissioner, (Dkt. No. 18). The case is remanded to the ALJ for further proceedings consistent with this opinion.

It is So Ordered.

_/s/ Mark G. Mastroianni_____
MARK G. MASTROIANNI
United States District Judge